*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0853**

In the Matter of the Complaint of Troy Scheffler Regarding
Representative Joshua Heintzeman and the
Committee to Elect Josh Heintzeman.

**Filed January 12, 2026
Affirmed in part, reversed in part, and remanded
Jesson, Judge***

Campaign Finance and Public Disclosure Board

Troy Scheffler, Merrifield, Minnesota (pro se relator)

R. Reid LeBeau II, Chalmers, Adams, Backer, and Kaufman, St. Paul, Minnesota (for respondent Committee to Elect Josh Heintzeman)

Keith Ellison, Attorney General, Nathan J. Hartshorn, Assistant Attorney General, St. Paul, Minnesota (for respondent Campaign Finance and Public Disclosure Board)

Considered and decided by Worke, Presiding Judge; Cochran, Judge; and Jesson, Judge.

**NONPRECEDENTIAL OPINION**

**JESSON**, Judge

In this certiorari appeal, relator Troy Scheffler challenges the decision of the Campaign Finance and Public Disclosure Board (the Board) to dismiss four of his ten allegations. Respondents Representative Joshua Heintzeman (Heintzeman) and the

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Committee to Elect Josh Heintzeman (the committee) seek affirmance of the Board's dismissals. Because we conclude that substantial evidence supports the Board's decision to dismiss the three allegations related to financial reporting by Heintzeman and the committee but conclude that the Board erred in its interpretation of Minnesota Statutes § 211B.04, we affirm in part, reverse in part, and remand.

**FACTS**

In February 2025, Scheffler filed a complaint with the Board against Heintzeman and the committee. As relevant here, the complaint alleged that (1) the committee's 2024 year-end campaign-finance report contained inaccurate or misleading entries concerning noncampaign disbursements, in violation of Minnesota Statutes §§ 211B.12, 10A.18 (2024) and Minnesota Rule 4503.0900, subpart 3 (2023); (2) Heintzeman failed to abide by Minnesota Statutes § 10A.09 (2024)[1] by not disclosing real property and income; and (3) a campaign sign Heintzeman used during the 2024 election cycle lacked a disclaimer that was "prominently" displayed as required by Minnesota Statutes § 211B.04 (2024).[2]

The Board concluded that, regarding the committee's 2024 year-end report, the complaint stated a prima facie violation of section 211B.12 with respect to court fees and a $20,000 unpaid bill, and a violation of Minnesota Rule 4503.0900, subpart 3, for failing

---

[1] Minnesota Statutes § 10A.09, subdivision 1, was amended during the 2025 regular session. 2025 Minn. Laws ch. 39, art. 7, § 12, at 93. That amendment does not impact the issues here.

[2] The complaint also included allegations that the committee fraudulently earmarked funds, failed to disclose a conflict of interest, and commingled personal and campaign funds—allegations that were dismissed and are not the subject of this appeal.

to include sufficient explanations to determine whether the $20,000 unpaid bill, $6,000 in-kind expense, and $445 in paid court fees were classified correctly as noncampaign disbursements. The Board also concluded that the complaint did not state a prima facie violation of section 10A.18 (the timely-rendering statute). Next, the Board determined that the complaint stated a prima facie violation of Minnesota Statutes § 10A.09, subd. 5(a)(3)-(4) but, after receiving more information from Heintzeman, found no probable cause to believe that a violation occurred. Finally, the Board concluded that the campaign sign contained a "visible and legible" disclaimer in the form required by Minnesota Statutes § 211B.04 (the prominent-disclaimer statute) and that the legislature had not defined "prominent" or prescribed specific size or placement requirements for outdoor signs. The Board, therefore, determined that the complaint did not state a prima facie violation of section 211B.04.

As allowed by statute and the Board's procedures, the committee filed an amended 2024 year-end report, separating previously aggregated entries and adding explanations for each line item. The amended year-end report stated that the entries regarding unpaid bills related to two complaints before the Office of Administrative Hearings, two complaints before the board, and a lawsuit involving Heintzeman in his capacity as a representative. The committee subsequently filed another amendment to correct a case number in its descriptions. After reviewing the amended materials, the Board determined that the violation of Minnesota Rule 4503.0900, subpart 3, was corrected and dismissed the complaint.

Scheffler petitioned for a writ of certiorari.

**DECISION**

Our review of a Board decision is governed by Minnesota Statutes § 14.69 (2024). *See* Minn. Stat. § 10A.02, subd. 13(a) (2024) ("Chapter 14 applies to the board."). Accordingly, the Board's determinations, like those of other agencies, are assumed correct. *In re Appeal by RS Eden/Eden House*, 928 N.W.2d 326, 332 (Minn. 2019). And the party challenging that determination bears the burden of proving that the decision "was reached improperly." *Cannon v. Minneapolis Police Dep't*, 783 N.W.2d 182, 196 (Minn. App. 2010) (quotation omitted).

As section 14.69 specifically provides, a reviewing court is limited to determining whether the agency decision is:

> (a) in violation of constitutional provisions; or
> (b) in excess of the statutory authority or jurisdiction of the agency; or
> (c) made upon unlawful procedure; or
> (d) affected by other error of law; or
> (e) unsupported by substantial evidence in view of the entire record as submitted; or
> (f) arbitrary or capricious.

Minn. Stat. § 14.69.

In this appeal, much of our review addresses whether the Board's decisions are supported by substantial evidence. Substantial evidence supports an agency's decision when, considering all the evidence, "there is relevant evidence that a reasonable person would accept as adequate to support" the agency's conclusion. *In re Expulsion of A.D.*, 883 N.W.2d 251, 259 (Minn. 2016). We defer to the agency's decision "so long as it is

4

reasonable and supported by substantial evidence, and we may not substitute our judgment for that of the agency." *Id.*

With this standard of review in mind, we turn first to provide background on the statutory framework governing the Board, before addressing the specific issues raised by Scheffler.

The Board investigates alleged violations of specific Minnesota election laws.[3] Minn. Stat. § 10A.022, subd. 3(a). To do so, the Board follows a defined process initiated by the filing of a written complaint. *Id.*; Minn. R. 4525.0200, subp. 1 (2023). The complaint must be in writing, signed, and detail the specific facts that support the alleged violation. Minn. Stat. § 10A.025, subd. 1b (2024); Minn. R. 4525.0200, subp. 2 (2023). After receiving the complaint, the Board first determines whether the complaint states a prima facie violation—that is, whether the facts alleged, if true, would violate the law. Minn. Stat. § 10A.022, subd. 3(c) (2024); *see* Minn. Stat. § 10A.01, subd. 32(a) (2024) (defining prima facie determination). If the Board finds that the complaint does not meet this threshold, it must dismiss the complaint without prejudice and notify the complainant and the subject of the complaint in writing, explaining the reasons for dismissal. Minn. Stat. § 10A.022, subd. 3(c); Minn. R. 4525.0210, subp. 4 (2023).

---

[3] The Board's jurisdiction is limited to investigations of alleged violations of chapter 10A and Minnesota Statutes §§ 211B.04, .12, .15 (2024) "by or related to a candidate, treasurer, principal campaign committee, political committee, political fund, or party unit, as those terms are defined in this chapter." Minn. Stat. § 10A.022, subd. 3(a) (2024); *see also* Minn. Stat. § 10A.01, subd. 10 (2024).

But if the Board finds that the complaint alleges a prima facie violation, it then conducts a probable cause determination. Minn. R. 4525.0210, subp. 2-3a (2023). This involves notifying the respondent, providing them with an opportunity to respond, and reviewing any relevant evidence. Minn. Stat. § 10A.022, subd. 3(d) (2024). If the Board determines that probable cause does not exist, it dismisses the complaint without prejudice and notifies both parties. *Id.*, subd. 3(e) (2024). On the other hand, if probable cause exists, the Board can decide whether to investigate the matter further. *Id.*; Minn. R. 4525.0210, subp. 5 (2023). During this stage, the Board may issue subpoenas, require the production of documents, and take testimony under oath. Minn. Stat. § 10A.022, subd. 2(a) (2024). If the Board chooses not to investigate, it must choose one of two options: dismiss the complaint without prejudice or order a staff review. Minn. R. 4525.0210, subp. 6 (2023). In choosing between those two options, the Board considers the type of alleged violation, the magnitude of the violation (if a financial violation), the knowledge or intent of the violator, the Board's available resources, "whether the violation has been remedied," and any other factor necessary for the Board to make a decision. *Id.*

A staff review is an informal process conducted by the Board's executive director. Minn. R. 4525.0320, subp. 1 (2023). The process begins when the Board directs the executive director to conduct a staff review. *Id.*, subp. 2 (2023). Once initiated, the executive director reviews available information and works informally with the respondent to assess whether a violation occurred and how any identified issues can be resolved. *Id.*, subp. 1; *see* Minn. Stat. § 10A.022, subds. 3b, 3c (2024).

If the executive director and respondent reach an understanding, the matter is resolved. Minn. R. 4525.0320, subp. 1; Minn. Stat. § 10A.022, subd. 3c. While the issues here do not involve a conciliation agreement, the matter may also be resolved through such an agreement, which the Board must approve. Minn. Stat. § 10A.022, subd. 3a (2024). But if the Board orders a formal investigation, it must notify the parties and provide the respondent an opportunity to be heard before the Board determines by a preponderance of the evidence whether a violation occurred. Minn. Stat. § 10A.022, subd. 3(e); Minn. R. 4525.0210, subp. 5; Minn. R. 4525.0340, subp. 3 (2025). If a violation occurred, the Board may impose a statutory civil penalty. Minn. Stat. § 10A.022, subd. 2(a).

With this background, we turn to address Scheffler's three challenges to the Board's decisions on the disclosure of financial information, as well as its decision under the prominent-disclosure statute.[4]

---

[4] Scheffler also appears to argue that the Board erroneously dismissed his complaint after the committee amended its 2024 year-end report to correct violations and that the Board "coded" its findings incorrectly on its website. He contends that the Board cannot dismiss a matter after violations are found simply because the respondent later amended its reports. This argument is unavailing. The Board must allow the respondent an opportunity to be heard, Minn. Stat. § 10A.022, subd. 3(e), and the committee availed itself of that opportunity. The Board followed its own rules in ultimately dismissing Scheffler's complaint. And Scheffler identifies no authority for this court to order the Board to change the dismissal designation on its website. *See Builders Ass'n of Twin Cities v. Bd. of Elec.*, 965 N.W.2d 350, 364 n.6 (Minn. App. 2021) (noting that inadequately briefed issues are not properly before this court).

**I.      The Board did not err when it determined that Scheffler's complaint did not state a prima facie violation of the timely-rendering statute.**

Scheffler alleged that the committee must pay legal expenses within 60 days of receipt.  The Board determined that the committee did not violate the timely-rendering statute because, although the provision obligates vendors to render bills to a political committee within 60 days, it does not impose the same obligation on the committee to pay those bills.

The timely-rendering statute states that "[a] person who has a bill . . . against a political committee . . . for an expenditure must render [it] in writing to the treasurer of the committee . . . within 60 days after the . . . service is provided."  Minn. Stat. § 10A.18.  As the Board noted in its prima facie determination, section 10A.18 does not specify when the political committee must pay the bill.  Instead, the statute focuses on when a vendor must render, or provide, a bill to the political committee.  The statute does not impose a duty on the committee to pay bills within 60 days.  Accordingly, substantial evidence supports the Board's decision.

To convince us otherwise, Scheffler argues that the law firm representing the committee did not issue invoices for legal services that were first reported as "estimates" within the 60-day window, showing that no timely bill was ever rendered.[5]

---

[5] Scheffler also contends that back-dated transactions show that the committee falsified information and laundered funds.  The Board did not address this claim, and neither do we. *A.D.*, 883 N.W.2d at 261 (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)).

We are not persuaded.  Scheffler points to "estimates" of legal services and invoices that span, at times, months of work to support his claim under the timely-rendering statute. But such is often the nature of legal services.  Clients receive estimates before services, at times, even begin.  And there is less clarity about when legal services for an ongoing matter[6] are provided than, for example, catering services for a specific campaign event. Given these realities, our deference to the Board, and the record here, we cannot conclude that the Board's decision is unsupported by substantial evidence.  *See A.D.*, 883 N.W.2d at 259 (noting that this court "must defer to the agency's decision so long as it is reasonable and supported by substantial evidence").

## II. The Board did not err when it determined there was no probable cause to believe the committee failed to adequately disclose legal expenses after the committee amended its 2024 year-end report.

The Board concluded that Scheffler's complaint stated a prima facie violation of section 211B.12 with respect to court fees and an unpaid bill.  In addition, the Board determined that the complaint stated a prima facie violation of Minnesota Rule 4503.0900, subpart 3, for failing to include sufficient explanations to determine whether the $20,000 unpaid bill, a $6,000 in-kind expense, and $445 in paid court fees were correctly classified

---

[6] For example, the amended 2024 year-end report includes an unpaid $10,000 bill for a case involving claims that Heintzeman deleted Facebook posts from followers on various Facebook pages used either by Heintzeman or his campaign.  The case was initially filed in August 2024, dismissed in January 2025, and now involves at least three appellate files. *Zinda v. Heintzeman*, No. A25-0987 (Minn. App. July 15, 2025), *rev. denied* (Minn. Sept. 24, 2025); *Zinda v. Heintzeman*, No. A25-0779 (Minn. June 6, 2025) (order denying writ of mandamus); *Zinda v. Heintzeman*, No. A25-0718 (Minn. App. May 6, 2025), *rev. denied* (Minn. July 15, 2025).

as noncampaign disbursements. After investigating, the Board issued a probable-cause determination finding reason to believe that several reported legal expenses were insufficiently described or classified and initiated a staff review.

As allowed by statute and the Board's procedures, the committee filed an amended 2024 year-end report, separating previously aggregated entries and adding explanations for each payment. The amended year-end report stated that the disbursements related to two complaints before the Office of Administrative Hearings, two complaints before the Board, and a lawsuit involving Heintzeman in his capacity as a representative. The committee subsequently filed another amendment to correct a case number in its descriptions. After reviewing the amended materials, the Board determined that the amended report remedied the violations of Minnesota Rule 4503.0900, subpart 3, and closed the staff review. The Board took no further enforcement action.

Substantial evidence supports the Board's decision that the amended report complied with both Minnesota Statutes section 211B.12 and Minnesota Rule 4503.0900, subpart 3. Section 211B.12 prohibits the use of "money collected for political purposes" unless it is reasonably related to the conduct of election campaigns or is a "noncampaign disbursement." Minn. Stat. § 211B.12. Minnesota Rule 4503.0900, subpart 3, states: "Itemization of an expense which is classified as a noncampaign disbursement must include sufficient information to justify the classification." But neither the rule nor its enabling statute specifies what amount of information is considered "sufficient . . . to justify the classification" of expenses as noncampaign disbursements.

After the Board determined that the committee's initial year-end report violated Minnesota Rule 4503.0900, subpart 3, it requested more information about the nature of the legal services listed in the report. The record includes emails and letters exchanged between the committee's attorney and the Board regarding the Board's request for more information about the various legal expenses. And the year-end report was ultimately amended to include that information by disaggregating legal expenses and adding descriptions, such as case numbers. The Board was satisfied by these amendments and concluded that the amended year-end report no longer violates Minnesota Rule 4503.0900, subpart 3. In other words, the amended report included information "sufficient . . . to justify the classification" of legal expenses as noncampaign disbursements. Thus, "the record contains substantial evidence supporting" the Board's finding that the amended report remedied the initial violation of Minnesota Rule 4503.0900, subpart 3. *In re Excelsior Energy, Inc.*, 782 N.W.2d 282, 290 (Minn. App. 2010) (quotation omitted).

We are mindful of the "substantial judicial deference . . . to be accorded to the fact-finding processes of the administrative agency." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 279 (Minn. 2001) (quotation omitted). The Board's findings here that the amended report remedied the initial violation of Minnesota Rule 4503.0900, subpart 3, enjoys that deference because it reflects the Board's expertise in interpreting a statute it is tasked with applying. *In re Application of Minn. Power for Auth. to Increase Rates for Elec. Serv.*, 838 N.W.2d 747, 757-58 (Minn. 2013). As a result, the Board did not err in concluding that the amended report did not violate Minnesota Rule 4503.0900, subpart 3.

**III.** **The Board did not err when it determined there was no probable cause to believe that Heintzeman violated section 10A.09, requiring the disclosure of certain economic interests.**

The Board determined that Scheffler's complaint stated a prima facie violation of Minnesota Statutes § 10A.09, subdivision 5(a)(3)-(4), because Scheffler alleged and provided evidence that Heintzeman owned non-homestead property in Minnesota and failed to disclose that property on his statement of economic interest. After investigating and receiving more information from Heintzeman, the Board found no probable cause to believe that Heintzeman violated section 10A.09.

Substantial evidence supports the board's decision.

As relevant here, a statement of economic interest must include "a listing of all real property within the state, excluding homestead property, in which the individual or the individual's spouse holds [certain ownership interests]" and "a listing of all real property within the state in which a partnership of which the individual or the individual's spouse is a member holds [certain ownership interests]." Minn. Stat. § 10A.09, subd. 5(a)(3)-(4). Reporting of business interests is also required. *Id.*, subd. 5(a)(6).

While Scheffler identified a rental property in Nisswa and asserted that it belonged to Heintzeman, substantial evidence in the record indicates that the property is homestead property. Records for the Nisswa property demonstrate that fact. And the Board credited testimony from Heintzeman's wife that neither they nor their business own real property in Minnesota except for homestead property. We defer to an agency's witness-credibility determinations and the inferences drawn from the record. *In re Corr. Ords. Issued to Wealshire of Bloomington*, 3 N.W.3d 284, 289 (Minn. App. 2024). Since homestead

12

property is exempt from reporting under Minnesota Statutes § 10A.09, subdivision 5(a)(3), and there is no evidence of other non-homestead real property in the record, substantial evidence supports the Board's decision to dismiss this allegation.

Still, Scheffler argues that Heintzeman violated Minnesota Statutes § 10A.09 by failing to report income from a short-term rental property. The relevant portion of section 10A.09 states that the statement of economic interest must include "a listing of the principal business or professional activity category of each business from which the individual or the individual's spouse receives more than" a certain dollar amount in the reporting period and "has an ownership interest of 25 percent or more in the business." Minn. Stat. § 10A.09, subd. 5(a)(6). But the statute does not directly address rental income. And, as the Board noted in its prima facie determination, public officials are instructed that they need *not* disclose rental income. *See* Minnesota Campaign Finance and Public Disclosure Board, *Public and Local Officials Handbook* 8 (2024), [**https://perma.cc/ML5B-WU3Y**] ("You . . . do not need to report . . . income from rental property."). In sum, substantial evidence in the record supports the Board's decision to dismiss Scheffler's allegation that Heintzeman failed to disclose non-homestead property or rental income on his statement of economic interest.

IV.  **The Board erred in its interpretation of "prominently" in Minnesota Statutes § 211B.04.**

The Board determined that the complaint did not state a prima facie violation of section 211B.04 because the sign Scheffler refers to contained a "visible and legible" disclaimer, and the Legislature had not defined "prominent" or prescribed specific size or

placement requirements for outdoor signs. Scheffler presents a similar argument about the prominent-disclaimer statute, though with different outdoor signs, in *In re Complaint of Troy Scheffler Regarding the Comm. to Elect Josh Heintzeman*, ___N.W.3d___, ___, No. A25-0632, slip op. at 2-3 (Minn. App. Jan. 12, 2025). In our recent precedential decision, we reversed the Board's interpretation of the governing statute, holding that a disclaimer is "prominently" included on campaign materials when it is conspicuous and readily noticeable to the electorate whom the material is intended to reach. *Id.* at 9-10. Applying this precedent, we similarly reverse the Board's decision with regard to section 211B.04 and remand for the Board to make a new prima facie determination regarding Scheffler's allegation under the prominent-disclaimer statute.

 **Affirmed in part, reversed in part, and remanded.**